Case number 17-7024, David W. Noble, Jr., appellate v. W. William M. Dunn, Jr., director of life insurance at Elk. Ms. Hackman for the appellant, Mr. P. Shira for the appellees. Whenever you're ready, counsel. Take your time. Good morning. Good morning. I'm Virginia Hotman, and here with Jerry Madden, we represent David Noble, who's the plaintiff appellant in this case. Mr. Noble's claims in this case embody the very heart of sections 201 and 501 of the LMRDA. And if left standing, the district court decision essentially guts these protections provided by the statute. A lot of the broader concerns that you address have been narrowed by this court's prior opinion. Yes. Particularly on your 501 claim. Court gave very specific remand instructions to the district court to consider all of the circumstantial evidence, all of the bad faith evidence, all of the evidence that both sides could proffer, and make a finding whether these two remaining defendants used the funds at issue for an improper personal purpose. And the district court did all of that. Every category of evidence he addressed pretty carefully. And he made a finding of fact that's subject only to clear error review. And it seems a pretty difficult case for you to say that that finding was clearly erroneous. Well, that's true. And it seems like that's the only open question on your 501 claim. Well, I don't think that's true with respect to the 501 claim, because I think the panel decision... What part of that is not true? Well, I think the panel decision in 2008 determined the Constitution itself did not prohibit the allowance in question. It said it was ambiguous. It was ambiguous. And so such an allowance... And the district court agreed with that. It said that the council had the authority to interpret it. It said that the council had the authority to interpret it, but the council interpretation essentially has to involve the expenditure of union funds in accordance with the Constitution. And the way in which these officials used and described and viewed this allowance is not consistent. Our opinion was maybe not a model of clarity, but there were at least two votes for the proposition that the Constitution was ambiguous, and there were at least two votes for the proposition that the interpretive question was subject to deferential review. And the union officials win if their interpretation is a reasonable one. If it's reasonable and made in good faith. And that part of the decision is not subject to clearly erroneous review. That portion of the decision, whether or not it was reasonably... Well, I understand why you make that argument, and we'll talk about it on the merits in a second. But in terms of what is or isn't open on remand, we did say that the district court did not err in applying the deferential standard of review under, I think, Mozilla. Right. But the deferential standard of review under Mozilla does not absolve the union officials from basing their construction on a good faith, reasonable construction of the Constitution. And I think we need to separate here the fact that in this particular case, the allowance itself was the resolution itself that authorized the allowance, which is what was really in front of the court the first time. It required, even though you didn't have to itemize and submit receipts ahead of time, it required these union members, as does Section 201, as do the implementing regulation, it required these officials to keep records. Because if they do not keep records, there's no way to have compliance with either their obligations under 201. That's your position on the underlying interpretive question. And we said the opposite position was at least reasonable. No, I'd say that's not true. The underlying argument with respect to the Constitution was that the Constitution allowed only itemized receipted expenses under, I think it's Article VI of the Constitution. And the decision in 2008 was no, it doesn't specifically prohibit this kind of allowance. But on remand, the district court needs to consider evidence of bad faith. Because the deferential standard does not apply. You're saying, as I understand, I don't want to put words in your mouth, but I want to make sure we're on the same page. You're saying that the remand instruction to consider bad faith has not only evidentiary significance on the question of what these two defendants were doing, but it has interpretive significance on construing the Union Constitution. Yes, because I think that's what defreeze is. And that's what this court revamped. Fair enough. And I'm not sure that's open, but let's assume it is. And let's assume, even let's assume that there was bad faith. The most that would get you is that the Union officials who were involved in the 1976 and 1986 misconduct, their interpretations can't be the predicate for deference, right? I don't think so. I mean, you have to take that position, right? That is your position, right? No, if I heard you correctly, that's not my position. You're trying to wriggle out of our arguable holding that the Union's position on what is or is not permissible is entitled to deference on the interpretation of the governing documents. Yes, the Union is entitled to deference. However, that deferential thumb comes off the scale. I understand. But a separate basis for deference can be a ratification by the Union Convention. Yes. All you have is that the Union presidents in 1976 and 1986 were misbehaving, and what they say about what these documents mean can't be the basis for deference. You still have the separate problem that 10 years later, the convention ratified this interpretation. And I don't think you have any colorable argument that that 1996 ratification was tainted by what some prior presidents had said 20 years earlier. No, but the ratification itself, the resolution itself, with its requirement that receipts and records be maintained, even though they need not be submitted, for future review by the Fiscal Committee, by the Department of Labor, and by members who want to review the accuracy of the handling of Union funds under 201, that requirement in the resolution, had it been the practice and the way in which the officials viewed, used, testified about this allowance, then I would agree with you. But that was all before us in the prior appeal. No, that aspect of this case was not part of the prior appeal. The part of the prior appeal essentially had to do with whether or not Noble had presented no evidence. And whether or not the Constitution itself limited the payment of reimbursement of expenses to those specifically provided in the Constitution in Article VI. You didn't argue in the prior appeal when there was this whole debate about the permissibility of getting reimbursement without the receipts? You didn't argue that this aspect of the resolution... That argument was based on the Constitution itself, which says that expenses to officials may be reimbursed when itemized. And this particular allowance gives $500 a month... That resolution was on the books. I mean, right? It was in existence at the time of this prior appeal. The Constitution itself... It's not a resolution of the resolution. The 1996 resolution that came out of the convention? It's the same. It's not... Here, what we're saying here and what wasn't addressed in 1996 is that... Is the receipt part of it?  The 2008 decision focused on the lack of receipts. And also the fact that the district court had not considered evidence of that faith. Right. But it seems like this argument that you're making about the significance, the interpretive significance of the resolution, is one that either was made or should have been made when all of these issues were teed up the last time around. Well, the last time around, at least in the district court, the district court found no evidence. So when it came out to this court of appeals, the posture was very different than it was in this particular appeal. But when we said that an interpretation of the governing documents that would permit compensation for these expenses, even without receipts, was a reasonable one, we had before us all of these resolutions that you're now talking about. It was possible, yes. You did. I've run out of time. I'm reserved three minutes. Okay. May it please the Court, Peter DeChiara from the law firm of Cohen, Weiss, and Simon, LLP. We are counsel to the defendant, Apley, National Association of Letter Carriers, AFL-CIO. I will be presenting argument today on behalf of all of the defendants, Apley's. Your Honors, after 24 years of litigation. You're presenting argument. The union is not a party to the 501 claim, right? That is correct, Your Honor. You're presenting the argument on the 501 claim? Yes, Your Honor. Our side has 10 minutes, and we decided it would be more efficient to have one lawyer make the argument. After 24 years of litigation, just two narrow issues remain in this case following remand. The first on Mr. Noble's Section 501 claim, which remains only against two former officers, Mr. Young and Mr. Hutchins, is the question of whether the district court on remand clearly erred in its fact-finding. In its 2008 decision, this court charged the district court with weighing plaintiff's circumstantial evidence of misuse of the allowance money, namely the lack of receipts, against the defendant's evidence to the contrary. And the district court did exactly what this court charged it with doing. It weighed the evidence, as Judge Sullivan explained in this carefully crafted decision. Judge Sullivan found, based primarily on the testimony of Defendant Young, that the lack of receipts for many of the expenses reflected the administrative burden of submitting receipts, not that the allowances were used for personal expenses. And the Supreme Court has said that a district court fact-finding on testimony, and recall Judge Sullivan presided at the trial where Mr. Young testified and heard that evidence live, saw his demeanor. The Supreme Court has said that as long as such testimony is facially plausible, not internally inconsistent or contradicted by external evidence, can, this is the Supreme Court's wording, can virtually never be clear error. I'll give you the point that his fact findings on whether these two defendants misused funds was not clearly erroneous. But is there this separate interpretive issue that I was discussing with your colleague? Because we said in the prior opinion, deference, deference unless bad faith, right? And then we remand with a specific instruction to consider bad faith. So one would think that maybe we were leaving open this question whether deference would be appropriate if there were a finding of bad faith. Your Honor, certainly this court in 2008 instructed the district court, and actually if you read the 2008 decision, I'm not sure it was quite an instruction. It was maybe an invitation to consider the evidence of the union president's statements at the two conventions in light of the DeFries case. But he did. Judge Sullivan did consider that. I'm sorry, Your Honor? Judge Sullivan did consider that. He absolutely did. He carefully looked at the – as the court asked him to, he carefully looked at – And the other aspect of it was that the union officials involved then were using the 500 for personal expenses. Had he considered that as well? He did. Judge Sullivan considered everything this court in 2008 asked him to consider. I would say they were lengthy, carefully crafted decisions. He really made an effort to – Is it true that the $500 a month in-town expense account dated back to the 1950s? That's what the record reflects, Your Honor. What was it worth in 1950? A lot more than it's worth today. That's for sure. And most of the expenses that they testified, as I remember, they said that – the union officials said it was hardly – we didn't spend at least $500 on – that's a dinner in a fancy restaurant in Washington. And they were going to – having taken people out to dinner all the time. So that seems plausible. I think it's certainly plausible, more than plausible. These are officers of a large national union who are representing a constituency of a couple hundred thousand members, meeting with public officials, meeting with Postal Service officials. They have a demanding job. They're constantly having meetings, meals, incurring expenses like parking, taxis. As they testified at trial and in support of summary judgment, and as the defendant's expert witness put in his report, easily an official in those circumstances would incur at least $500 a month in expenses. As Your Honor's note, the judge below did look at the evidence of what was said at the conventions, and he considered it in light of Defries. And Judge Sullivan permissibly and properly concluded that the evidence of what was said at the two conventions, considered in light of Defries, did not compel a finding of a Section 501 violation. Could we talk a little bit about the 201 issue? Yeah. What do you think the phrase necessary to verify means? It seems like there's not a whole lot of case law on that point. Your Honor, I think one could formulate the test or articulate the test in different ways, but I think conceptually, at bottom, it's a two-part test. There's just cause, so you have to, and then it's written right into the statute. I agree it's two parts. I'm asking you what the second part is. Judge Sullivan said what he thought it was, and I think he was correct, and what he said was. How can you have just cause if it's not necessary for the documents to be produced? I'm sorry, Your Honor. I don't follow the question. Well, you said there are two parts to it, but what I don't understand is how can you ever have just cause for requesting the documents when the documents aren't necessary to be produced? Well, here, this case is saying, oh, all right, he had just cause, and now we'll examine whether these were necessary documents. Oh, they weren't necessary, but he still had just cause. I mean, that makes no sense at all. Well, that's exactly what the judge below determined in this case. For example, in the case of the Minneapolis bank account records, Judge Sullivan found, we don't agree that that was correct, but he found that Mr. Noble had just cause because someone told Mr. Noble that this allegedly unauthorized bank account existed, and the person told him he was concerned about how the money was being used. So Judge Sullivan said that met the standard for just cause, but what Judge Sullivan concluded correctly was it did not meet the necessary to verify standard because Mr. Noble's – In other words, so you didn't have just cause. I guess, Your Honor, again, you could lump them and make it one big test, or you could separate them out. That's why I said at the beginning, I think you could play with – and courts have played with different formulations, but I think conceptually you need to satisfy both. The district court said whether this goes into the just cause bucket or the necessary to verify bucket, district court says as to the bank account, he's talked to a union official in the local office. I think it was the president of the local who says there is this bank account. I have concern about it. Judge Sullivan says that that is enough to put a reasonable union member – enough to raise concern for further inquiry. If that's true, why couldn't he satisfy the necessary to verify? He says I need to see any documents related to this bank account, and the reason I need to see them is I want to see if this bank account is reflected in the LM-2, which looks like it's a pretty comprehensive document with the balance sheet, all the assets, all the liabilities. If there is such a bank account, presumably it should be on the form, and that's what I want to verify. And that's what Judge – that was exactly Judge Sullivan's analysis. Why isn't that a perfectly good theory, at least as to documents related to the bank accounts? So Judge Sullivan found there was just cause. He found that Mr. Noble said that what he – so Judge Sullivan divided the just cause into two elements, and the first element, according to the judge, was satisfied, that Mr. Noble said what he wanted to verify, which was that whether or not the Minneapolis bank account was in the LM-2, where, according to the judge, Mr. Noble fell short, is showing how obtaining those Minneapolis bank records would have assisted him in verifying whether those records were in the LM-2. And when asked – But his – Judge Sullivan's theory is essentially that Mr. Noble pleaded himself out of court with this rather remarkable statement that only by seeing every document in the union file will I be able to resolve this concern about the bank account, right, which seems transparently ridiculous. But I'm not sure it answers the question why couldn't – why couldn't he – why wasn't he entitled to see any records about the bank account? Because the burden rests on the plaintiff, the Section 201 plaintiff, to articulate how the documents he was seeking or he is seeking would assist him in what he's trying to verify. Did the reports designate the banks by name and then itemize what the deposits and withdrawals were in each individual bank or was it a lump sum? I'm glad you asked that question, Your Honor. The LM-2s are attached to the amended complaint and what they show or what the form requires is an indication of the total that's in the union's bank – all of the union's bank accounts at the beginning and at the end of the reporting period. So Noble was exactly right. The only way that he could decide or determine whether the Minneapolis bank account was not being properly reported is if he had information on every bank account throughout the country that the union had. That's, however, not what he asked for. He asked for the entirety of the union's records. Well, he asked for that plus, yeah, yeah. So that universe of things plus everything else, every computer file, every piece of paper, every file in this large national union. So you can call it – you could characterize it – So suppose he had asked – suppose he had made the request Judge Randolph said, which is broader than the one I was thinking of, particular to the bank, but narrower than the one that Judge Sullivan lampooned, which is everything in the files. Why isn't that a good request? Your Honor, that's a hypothetical. I don't know whether that would be a legitimate request, whether Judge Sullivan would have thought that that would have satisfied the requirement. But that was not this case. That was – the district court asked Mr. Noble what he was seeking and the answer he got from Mr. Noble. And I know counsel for Mr. Noble now want to back away from that, but the answer he got was the ludicrous answer that he wanted to see the entirety of the union's files. And Judge Sullivan's determination should be based on what was before him, not some hypothetical. That was the statement in his – what was it, an affidavit or a filing? Correct. Was there any briefing associated with that? I believe Mr. Noble filed a brief and a declaration at the same time. And if we looked at all of that material and charitably construed it to avoid forfeiture, is there any way of reading into that some minimal relevancy limitation? I'm saying all the documents, but in the context of a request about bank records, what I mean is all the documents about bank records. I don't think so, Your Honor. Do local unions have to file reports too? Yes, Your Honor. Okay. And there is a local union in Minneapolis, I think. There is – the union has hundreds of local unions around the country. The Minneapolis bank account allegedly – and let me just say, we said this in our brief, let me just say it again. It's not a local union bank account. No, what Mr. Noble is speaking about – and we – the union is not aware of this bank account existing, but what Mr. Noble is talking about, as I understand it, is a bank account that was held at the Minneapolis region of the national union. So the union is divided into about 15 separate regions, and the region that includes Minneapolis, the allegation or the suspicion is that that region of the national union, that administrative subdivision of the national union, had created this unauthorized bank account. The checkoff or the union dues, do they go into the locals or the national? Your Honor, I am not sure of the answer to that question. I believe the – I don't want to venture an answer to that because I just don't know, and there's nothing in the record here that I think depairs on it. I'm just thinking about what – if you got the records from the region, even the region with the Minneapolis bank, you'd still need a heck of a lot more to make the kind of determination that Mr. Noble was seeking to make. Agreed. I assume you're going to give me the same answer, but let's just go through this exercise with regard to the housing allowance. So he says the union is paying money to the landlords for the housing expense of the president, and that's unauthorized compensation. Union's response is, yeah, we're paying the money, but it's not unauthorized. We're deducting it from his salary. So why couldn't he – I'm looking at the LM-2, and there's a line item, very specific line item on here, compensation of officers, sombroto, officer sombroto, title, president, salary, $131,000. Why couldn't he have a perfectly good claim that he needs to see the underlying records regarding those payments, the rent payments, and the sombroto compensation associated with it, to verify that this $131,000 salary is only his authorized salary rather than an illicit side payment for the housing allowance? Again, Your Honor, you're right. I will give you the same answer. That's not what – that's not this case. That's not what Mr. Noble asked for. Whether in a hypothetical alternative universe that might have been an appropriate request, I'd prefer not to speculate. But that's what I thought you were going to say. Thank you. Thank you very much. I'm sorry we didn't really let you talk about the Section 201 issues. Speaking only for myself, I'll tell you that is of somewhat more interest to me. Okay. I also did speak about the evidentiary question in 501, but I'll focus first on Section 201. First of all, the counsel for the defendants, we don't agree with their statement that he has requested from the beginning every item, every computer item, et cetera. That is simply not true. If you look in our briefs, we go through the requests that Mr. Noble made from the beginning with respect to these specific transactions. Here's – I'm sorry, but here's the money quote on which the district court – Yes, I understand. Paragraph 30, you know what I'm going to say, right? It is only by looking – only by looking at the entirety of the union's records that I will be able to determine what I want to determine. Right. But that particular quote, which is obviously a pro se plaintiff's attempt at explaining to the district court what has existed throughout the record – I'm sorry. He was pro se at the time? Yes. Okay. And which the district court understood by himself describing what the requests were, okay? He had been asking from the beginning with respect to the bank account. He named the bank account, but he can't just look at the bank account. The LN2 involves the union making some determinations with respect to how certain payments are categorized. And then those categorizations are lumped together into lump sum amounts that are in the LN2. So the necessary to verify test here by the district court is unprecedented. Where here Mr. Noble is talking about he's got just cause to inquire with respect to specific expenditures of union funds. Those funds are necessarily included in the LN2s. And so the necessary to verify link to the LN2 is there. In terms of do you quarrel with the district court's articulation of the legal standard? Put aside how he applies it here, but it seems like statute says it has to be necessary to verify the records. Well, I think there's a question, and this court has not adopted it. I'm sure you've read the Malik case. This court has not adopted this two-part test. But whether it's viewed as a two-part test or a one-part test, the language – and I think the Malik court talks about the fact that the language of the statute is just cause to examine any books, records, or accounts necessary to verify such report. So the first question is whether necessary to verify is just defining what you are examining or whether it's part of a separate test to just cause. But in either case, what you're talking about is spending money. Whether you think of it as one step for reasons Judge Randolph expressed or two as it seems to be articulated in the statute. What is wrong with the proposition that the statute says you need just cause to think that the records are necessary to verify the LM-2? What that means at a minimum is that you have to take the LM-2 and point to something that you want to verify and explain why the records that you're seeking will help you make that verification. Well, the courts in the past have not required, and even Judge Sullivan recognized, you don't have to point to something specific in the LM-2. Or something general.  When I say specific, I don't necessarily mean a narrow line item like Sombroto's salary. It could be the assets that generally encompass bank records. Well, I think that was done here. And that was done in conjunction with the just cause requirement. Because in this particular case, Mr. Noble is pointing to expenditures. Whether it is the use of the bank account to put NLSC money into it and use it to pay for individual officers' election expenses. Whether it is the housing payments made for officers. Each of those things ultimately need to be reflected accurately, either as deductions from salary or expenses or additional salary in the LM-2 reports. And so in this particular case, the necessity to verify language in terms of having separate and independent importance comes up in cases like the Fernandez-Motors case. I want to just interrupt you. I can see how various documents would be necessary to verify what's in the report. As a separate requirement, if the union member comes in and is asked the question, why do you want these documents? I want them to verify what's in the report. And the questioner says, well, why? He says, I don't know, I'm just curious. Is that just cause? That does not satisfy just cause. Okay, okay. I can understand that. But what I can't understand is how you could have just cause when the documents you're seeking are not necessary to verify the material in the report. Well, I think that's because in this context they do, because they involve union expenditure of funds, which are necessarily in the LM-2s. So if you establish just cause, then the statute tells you you are entitled to examine any books and records that are necessary to verify. And so Mr. Noble here, as you can see on page 9 of our reply brief, we quote portions of the district court decision where he actually described what Mr. Noble's requests were, and it was to examine all NLC documents and records for a period of years pertaining to the bank account number X, Y, and Z. It was a request to examine documents and records for that same period pertaining to NLC payments for housing expenses for Sombrero and O'Connell. And then the third grab bag has a similar language to it. And, in fact, that's where he went wrong was in the application of the test, because that is sufficient to satisfy both sides' requirement. And without examining the records, you can't know exactly where on the LM-2 those transactions and expenditures are reported. I assume you would agree that there is no just cause for the request as construed by Judge Sullivan, right, which is give me everything in all your files. Well, I would say as construed by counsel for the labor union, this describes it as every item. It was never what he requested. He did not request every item of paper that the union had ever had dealt with. Any further questions? Thank you.
judges: Henderson, Katsas, Randolph